NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVE SHANNON,<br><br>          Plaintiff,<br><br>v.<br><br>HOWMEDICA OSTEONICS CORPORATION,<br><br>          Defendant. | Civil Action No.: 09-4171 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matters comes before the Court on Defendant Howmedica Osteonics Corporation's ("Howmedica") motion for partial dismissal of Plaintiff Dave Shannon's Amended Complaint. Mr. Shannon's Amended Complaint asserts six claims against Howmedica for: (1) strict liability under New Jersey's Products Liability Act ("PLA") based on product defect (Count I); (2) failure to warn under the PLA (Count II); (3) breach of implied warranty under the PLA (Count III); (4) breach of express warranty (Count IV); (5) a violation of New Jersey's Consumer Fraud Act ("CFA") based on injury to him (Count V); and (6) a violation of the CFA based on injury to the product (Count VI). Howmedica presently moves to dismiss Counts III, V, and VI as preempted by the PLA and Count IV as insufficiently plead. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Howmedica's motion is granted in part and denied in part.

I.     BACKGROUND

"On January 25, 2000, defendant Howmedica sold a Duracon® Femur/P.C.A.® Modular Constrained Tibial Insert Neutral Large 11mm . . . for implantation into the body of plaintiff." (Am. Compl. ¶ 8.) This implant replaced a prior Howmedica Tibial Insert that had failed. (Id., at ¶¶ 6-8.) Mr. Shannon asserts that his physician believed the insert implanted in January 2000 "to be a 'new, improved' . . . insert." (Id., at ¶ 9.) However, Mr. Shannon alleges that "[b]y 2008, the . . . insert had failed catastrophically and debris from the failed insert had triggered a well-recognized adverse reaction in [his] knee joint known as osteolysis." (Id., at ¶ 17.) He asserts that "[o]n November 4, 2008, [he] underwent a second revision surgery where it was discovered that, as a result of the premature failure of the insert, he had suffered extreme bone loss, and the extreme bone loss had undermined the entire knee replacement." (Id., at ¶ 19.)

Mr. Shannon alleges that "[b]y at least 1993, defendant Howmedica was aware that the packaging, sterilization, and storage of polyethylene inserts in air rendered them prone to premature failure and thus defective." (Id., at ¶ 14.) He states that "[b]y at least 1997, defendant Howmedica began advertising to the orthopedic community that its polyethylene inserts were not packaged, sterilized, or stored in air." (Id., at ¶ 15.) However, he alleges that despite the representations in its advertisements, the insert he received in 2000 "was packaged, sterilized, and stored in air." (Id., at ¶ 16.)

II.     LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id.  However, a plaintiff is not required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotations omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

### III.  DISCUSSION

#### A.  Counts III: Breach of Implied Warranty

Homedica argues that Mr. Shannon's breach of warranty claim is preempted by the PLA. Mr. Shannon argues that he brings his claim under the PLA, as is permitted.  He states that his claim is based on the fact that the product was "not fit for its intended purpose."  (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Counts Three, Four, Five, and Six of Pl.'s Am. Compl. [hereinafter "Pl.'s Opp'n"], at 2.)  With the exception of breach of warranty claims, the PLA is the exclusive remedy for "harm caused by a product" regardless "of the theory underlying the claim."  Sinclair v. Merck & Co., Inc., 948 A.2d 587, 595-96 (N.J. 2008); see also Repola v.

Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991). And, under the PLA there are only three causes of action: manufacturing defect, failure to warn, or design defect. See N.J. Stat. Ann. § 2A:58C-2. "[T]he PLA no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for harm[,] [including personal injury,] caused by a defective product or an inadequate warning." Koruba v. Am. Honda Motor Co., Inc., 935 A.2d 787, 795 (N.J. Super. Ct. App. Div. 2007) (internal quotations omitted; alteration in original). Thus, Mr. Shannon's breach of implied warranty claim is subsumed by the PLA and is not actionable separate from his defect or failure to warn claim under the PLA. Howmedica's motion to dismiss Count III is granted; Count III is dismissed with prejudice.

    **B.**    **Counts V & VI: CFA Claims**

Although Mr. Shannon's Amended Complaint is not entirely clear, Count V appears to seek relief for injury to him from the product. He states that the insert "failed prematurely and catastrophically, resulting in significant and severe injury consisting of an ascertainable loss under the [CFA]." (Am. Compl. ¶ 50.) Count VI appears to seek relief for injury to the product. He states that Howmedica's packaging, sterilization, and storage of the product "in air rendered it worthless for its intended purpose[;] plaintiff expended a substantial sum of money he otherwise would not have expended to purchase the product which expenditure is an ascertainable loss under the [CFA]." (Id., at ¶ 58.) Howmedica argues that both of these CFA claims are subsumed by the PLA. Alternatively, it argues that Mr. Shannon has failed to sufficiently plead these claims as he has failed to plead an appropriate ascertainable loss.

As noted above, the PLA is the exclusive remedy for claims based on the harm caused by a product. This includes claims brought under the CFA. See Sinclair, 948 A.2d at 596 ("The

language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product."). However, this does not mean that every CFA claim will be subsumed by the PLA. The PLA specifically excludes damages to the product itself. See N.J. Stat. Ann. § 2A:58C-1b(2); see also Sinclair, 948 A.2d at 594.

Here, Count V appears to seek damages for personal injury caused by the product, and as such, is subsumed by the PLA. Therefore, this Count is dismissed with prejudice. On the other hand, Count VI appears to seek damage for harm to the product itself, which is not subsumed by the PLA. The question, then, is whether Mr. Shannon has adequately plead this claim.

"[T]o state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007) (internal quotations omitted). Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements discussed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. See Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). Count VI states that the amount expended for the product, i.e. the purchase price, represents an ascertainable loss. Howmedica argues that the purchase price of a product does not constitute an ascertainable loss.

In Parker v. Howmedica Osteonics Corp., this Court held the plaintiffs' "payment of the purchase price of the [product] does not meet the ascertainable loss requirement." No. 07-2400, 2008 U.S. Dist. LEXIS 2570, at **11-12 (D.N.J. Jan. 14, 2008) (discussing Thiedemann v.

Mercedes-Benz USA, LLC, 183 N.J. 234 (N.J. 2005), and Furst v. Einstein Moomjy, Inc., 860 A.2d 435 (N.J. 2004)).  As this Court noted in Parker, the New Jersey Supreme Court agreed with the trial court in Furst "that the replacement price of the carpet, not the purchase price, constituted plaintiff's ascertainable loss."  Id.  Thus, Count VI, which is based on loss of the purchase price of the insert, fails to adequately plead an ascertainable loss.  However, because Mr. Shannon's Amended Complaint generally alleges that he has incurred medical and other expenses, it is unclear if Mr. Shannon incurred costs to replace the insert or incurred other out of pocket expenses that are *not covered by his PLA claims*.  Therefore, Count VI will be dismissed without prejudice.

        C.        **Count IV: Breach of Express Warranty**

An express warranty is created under New Jersey law by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," "[a]ny description of the goods which is made part of the basis of the bargain," or "[a]ny sample or model which is made part of the basis of the bargain."  N.J. Stat. Ann. § 12A:2-313(1)(a)-(c).  Howmedica argues that the Amended Complaint fails to provide sufficient factual allegations to state a claim for breach of an express warranty.

Mr. Shannon alleges: "Defendant Howmedica expressly warranted by affirmation, promise, description, and sample that the product was reasonably fit for extended, safe use as a polyethylene insert."  (Am. Compl. ¶ 40.)  He further alleges that the "representations made by defendant Howmedica were meant to directly or indirectly induce persons such as plaintiff to purchase the polyethylene insert, for implantation into their bodies."  (Id., at ¶ 41.)  In addition to these broad allegations in Count IV, Count IV also incorporates the other general factual

allegations previously made in the Amended Complaint.  These include that since 1997 Howmedica represented that the "inserts were not packaged, sterilized, or stored in air" (id., at ¶ 15), and that, despite this representation, the insert implanted in him in 2000 "was packaged, sterilized, and stored in air" (id., at ¶ 16).

In Parker, this Court dismissed an express warranty count in the plaintiffs' amended complaint because of insufficient pleading.  The amended complaint merely stated

> that the express warranties came in the form of (I) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media of uniform promotional information that was intended to create demand for the Trident System, but which contained material misrepresentations and utterly failed to warn of the risks of the Trident System; (iii) verbal assurances made by Defendant's consumer relations personnel to the public about the safety of the Trident System and the downplaying of the risks associated with the Trident System; (iv) false and misleading written information supplied by Defendant.

2008 U.S. Dist. LEXIS 2570, at **20-21.  In a subsequent amendment, the plaintiffs added new facts; specifically they added an "allegation regarding [a] .5% defect rate printed on the product's label," "that [plaintiffs'] product malfunctioned," and "that evidence shows the rate of defect to be much higher than .5%." Huber v. Howmedica Osteonics Corp., No. 07-2400, 2008 U.S. Dist. LEXIS 106479, at **12-13 (D.N.J. Dec. 30, 2008).  This Court found these additional allegations sufficient to state a claim applying the Twombly standard.  Id.

Mr. Shannon's express warranty allegations are more akin to the subsequent, sufficient allegations in Parker.  He does not merely allege that Howmedica made "representations."  He alleges specifically that it represented that the insert was not packaged, sterilized, or stored in air, when it was.  This pleading puts Howmedica on sufficient notice of the basis for the express warranty claim asserted against it.  Howmedica's motion to dismiss Count IV is denied.

## IV. CONCLUSION

For the foregoing reasons, Howmedica's motion to dismiss is granted in part and denied in part. It is granted with respect to Counts III (breach of implied warranty), V (CFA claim based on personal injury), and Count VI (CFA claim based of harm to the product). Count VI is dismissed without prejudice to Mr. Shannon to amend his Amended Complaint to correct any deficiencies. Counts III and V are dismissed with prejudice. Howmedica's motion is denied with respect to Count IV. Also, Howmedica's request for attorney's fees is denied. An appropriate Order accompanies this Opinion.

DATED: February 1, 2010          /s/ Jose L. Linares
                                 JOSE L. LINARES
                                 UNITED STATES DISTRICT JUDGE